IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDY KING, Individually and as** | **:** | |
| **Administrator of the Estate of Christopher** | **:** | **CIVIL ACTION** |
| **King, Deceased, on Behalf of Herself and** | **:** | **No 16-3614** |
| **Those Similarly Situated** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| **v.** | **:** | |
| | **:** | |
| **GOLDEN RULE INSURANCE COMPANY,** | **:** | |
| **Defendant.** | **:** | |

**McHUGH, J.**                                                   **December 19, 2016**

**<u>MEMORANDUM</u>**

This case arises out of the unilateral rescission of a health insurance policy after the

carrier discovered what it deemed to be material misrepresentations in the policy holder's

application.  Although Plaintiff does not deny that an insurance company has a right to rescind a

policy, she contends that a carrier must bring suit in order to exercise that right.  In support of her

claims, she argues that a carrier's right to rescind a health insurance policy must be limited

because of the critical importance of such coverage.  In essence, Plaintiff seeks to carve out an

exception to the common law remedy of rescission, precluding health insurance carriers from

rescinding unilaterally, and forcing them to seek judicial approval of a rescission.  Although the

body of relevant precedent is more limited than one might expect, it is sufficient to support the

actions taken by the carrier here.  I will therefore grant Defendant's Motion to Dismiss.

**I.  Facts**

Plaintiff Wendy King's deceased husband, Christopher King, entered into a short-term health insurance contract with Defendant Golden Rule Insurance Company.[1]  In his application for insurance, Question No. 6 asked whether, within the last five years, Mr. King "received medical or surgical consultation, advice, or treatment, including medication, for any of the following . . . diabetes, cancer, heart or circulatory system disorders . . . .  If yes, state the name of each person . . . (The person(s) named will not be covered under the policy/certificate)." Compl. Ex. B at 21. ECF 1-1.  Mr. King answered "no."  In fact, he had been diagnosed with and treated for diabetes and chronic vein insufficiency, and had a tumor on his spinal cord.[2]

The application form included the standard caution that misrepresentations could void coverage.  Specifically, a "Statement of Understanding" provision appearing directly above Mr. King's electronic signature on the application warned that "incorrect or incomplete information on this application may result in voidance of coverage and claim denial."  *Id*.  By signing the application, Mr. King thereby represented that "the information shown on it is true and complete."  *Id*.  The application was signed on June 6, 2015, with the coverage effective the following day.  The front page of the Policy contained the following notice:

---

[1] Because short-term plans are not deemed to be compliant with the Affordable Care Act, its provisions mandating coverage for pre-existing conditions did not apply.

[2] Mr. King also listed his height as 6'4" and his weight as 280 pounds, contrary to medical records representing his height as 6'2" and his weight at 295 pounds, statistics relevant to Body Mass Index and where a patient falls on the National Institutes of Health measurement of obesity.

> **Check the attached application.** If it is not complete or has an error, please let us know. An incorrect or incomplete application may cause your certificate to be voided and claims to be reduced or denied.

Compl. Ex. B at 19.  ECF 1-1.  The Policy further included the following provision:

> MISSTATEMENT IN APPLICATION: A misstatement in the application for coverage may be used to void coverage and/or deny or reduce a claim for loss incurred within 24 months of the effective date of coverage under the policy.

Mr. King immediately began to seek treatment under the policy.  He died in August 2015, for reasons not apparent from the record.  In December, following a medical review of King's prior history obviously prompted by the claims submitted, Defendant refunded the premiums to his estate and gave notice it was rescinding the policy.  The notice of rescission stated that Mr. King was ineligible for the coverage he had received, and that the policy would not have been issued if he had accurately reported his medical history and vital statistics.   Compl. ¶¶ 16-17 & Ex. C at 3.  ECF 1-2.

The Amended Complaint, brought on behalf of Mr. King's estate, his widow individually, and a putative class, asserts claims for breach of contract, bad faith, and unjust enrichment, and seeks a declaration that rescission outside of a judicial proceeding is improper. Defendant has moved to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim.

## II.  Standard of Review

Because this is a 12(b)(6) Motion, I must accept Plaintiff's factual allegations as true and construe the Amended Complaint in the light most favorable to her, but may rule definitively on matters of law.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).   Additionally, Rule 10(c) requires me to evaluate, as part of the Complaint, "[a] copy of any written instrument

which is an exhibit" to it, and Plaintiff has attached the documents pertinent to the carrier's rescission.

### Analysis

The heart of Ms. King's case is set forth is paragraphs 25 through 28 of the Complaint. She contends that to perfect its common law right of rescission, Golden Rule was first required to initiate a court proceeding to prove that her husband procured the policy through fraud or material misrepresentation.  Therefore, she argues, regardless of Defendant's grounds, the manner in which the policy was rescinded violated Pennsylvania law, rendering the rescission ineffective.  The essence of Plaintiff's case is summarized in paragraph 27 of the Amended Complaint: "Defendant Golden Rule cannot be the sole arbiter of whether Christopher King made a fraudulent misstatement on the insurance application."

Rescission is a well- established common law remedy, and its application to insurance contracts is not in dispute.  *Klopp v. Keystone Ins. Cos.,* 528 Pa. 1, 595 A.2d 1 (1991).  It is the scope and execution of that remedy that Plaintiff challenges.

The Pennsylvania legislature has not specifically addressed a carrier's right to rescind, but it has addressed misrepresentation in an application as a basis for refusing benefits.  Section 622 of the Insurance Company Law of 1921 provides:

> The falsity of any statement in the application for any policy covered by subdivision (b) of this article shall not bar the right to recovery thereunder, unless such false statement was made with actual intent to deceive, or unless it materially affected either the  acceptance of the risk or the hazard assumed by the insurer.

40 Pa. Const. Stat. § 757.

On its face, the statute provides some level of protection to an insured, by establishing that not every misstatement voids coverage.  It is clear, however, that a carrier need not prove intent to deceive in order to rescind a policy.  The Court of Appeals has held that Section 622

4

should be read in the disjunctive so that coverage may be denied on "alternate and separate grounds if the false statements materially affected the risk accepted or the hazard assumed by the insurer." *Conn. Mut. Life Ins. Co. v. Wyman*, 718 F.2d 63, 67 (3d Cir. 1983); *accord, Knepp v. Nationwide Insurance Co.,* 471 A.2d 1257 (Pa. Super. Ct. 1984).  In my view, this lesser burden significantly undercuts Plaintiff's contention that an insurer must file suit to invoke rescission, particularly because under Pennsylvania law "[a]n application is an integral part of the policy and the questions and answers contained therein are material to the risks which both the company and insured assume." *Peters v. World Mut. Health & Accident Ins. Co.of Pa*, 213 A.2d 116, 118 (Pa. Super. Ct. 1965).

Plaintiff is correct that in many cases a carrier seeking to rescind brings suit, rather than invoking rescission unilaterally.  Plaintiff is also correct that most of the reported cases affirming a carrier's right to rescind do not involve health insurance.  But Plaintiff's attempt to advance a special rule for health insurance cases is seriously undermined by the fact that the Pennsylvania Superior Court has explicitly approved unilateral rescission by a carrier under virtually identical circumstances.  In *Knepp, supra,* the insurer had issued two policies, one for "Hospital and Surgical Expense" and another for "Major Medical Expense."  After learning that its insured had failed to disclose a pre-existing congenital condition which would have excluded coverage, it cancelled the policies and refunded the premiums.  Suit was then brought by the insured to reinstate the policy.  In affirming a judgment on behalf of the carrier, the Superior Court specifically held that "under such circumstances, an insurer may rightfully rescind the policies of insurance," citing Section 622 of the Pennsylvania Insurance Law.  471 A.2d at 1260.  Plaintiff summarily dismisses *Knepp* as involving a different type of insurance, *see* Plaintiff's Response

in Opposition at 13, but I see no meaningful distinction and no reason not to accept *Knepp* as an accurate statement of Pennsylvania law.

*Matinchek v. John Alden Life Insurance Co*., 93 F.3d 96 (3d Cir. 1996), a case not cited by either party, lends further support to the proposition that a carrier has a unilateral right of rescission where its insured has made misrepresentations in his or her application. The insurer there had issued a group health policy, and the insured, like Mr. King here, falsely represented that he had no history of diabetes. Subsequent claims submitted under the policy led the carrier to investigate, and upon confirming the misrepresentation, it rescinded the policy and refunded the premiums. The district court treated the case as one governed by ERISA, and on that basis entered summary judgment in favor of the insured. The Court of Appeals reversed and remanded the case granting leave to the plaintiff to amend the complaint to assert claims under Pennsylvania law. In doing so, however, it expressed doubt that the plaintiff could prevail, stating that the misrepresentations in the plaintiff's application gave the carrier "a right to rescind the insurance contract," under Pennsylvania law. *Id* at 102. Although this portion of the opinion is indisputably *dicta,* it undercuts the fundamental premise of Plaintiff's case.

Consistent with this discussion in *Matinchek,* two members of this Court have held that Pennsylvania permits the unilateral rescission of insurance contracts as a remedy for misrepresentation, one in the context of disability insurance, *Friel v. Unum Life Ins. Co. of America,* [3] 1998 WL 800336 (E.D. Pa. 1998) (Hutton, J.), and one in the context of liability insurance. *Assoc. Elec. & Gas Ins. Svcs., Ltd. v. Rigas*, 382 F. Supp. 2d 685 (E.D. Pa. 2004) (Baylson, J).

---

[3] Plaintiff's attempts to distinguish *Friel* as a case where the insured brought suit and rescission was then asserted as a defense. In fact, the policy holder's suit was instigated by correspondence from the carrier giving notice of rescission and refunding the premiums.

The Third Circuit recently addressed the nature and scope of the right of rescission in *Sherzer v. Homestar Mortgage Services Inc.*, 707 F.3d 255 (3d Cir. 2013), an action brought under the Truth in Lending Act.  Plaintiffs there were consumers who exercised a statutory right to rescind a mortgage by providing written notice to the lender within a three-year window established by statute, but did not sue to enforce the rescission until the statutory window had expired.  The lender argued that the suit to enforce the recession was untimely and therefore the rescission lacked legal effect.  *Amici* who intervened in support of the lender's position advanced the precise argument pressed by Plaintiff here, contending "that rescission, as it is generally understood, 'is a court-ordered unwinding of a contract,' which necessarily 'involves a judicial termination of a party's contractual obligations.'"  707 F.3d at 261, n. 4.  The Court of Appeals criticized that formulation as "only partly true," because at common law **two** types of rescission are available, rescission in equity and rescission at law.  Rescission at law "occurs automatically when parties have taken the requisite action, and any subsequent suit is brought to enforce the rights flowing from rescission."  *Id.*

In summary, a fair reading of Pennsylvania law compels the conclusion that unilateral rescission of a contract remains an optional remedy for an insurance carrier.  The fact that carriers often choose to proceed conservatively by bringing suit does not limit the array of remedies permitted by common law, and  neither the Court of Appeals in *Matinchek* nor the Superior Court in *Knepp* hesitated to endorse unilateral rescission even in cases involving health insurance.

Turning back to the facts of this case, Defendant effected a "rescission at law" by identifying material misrepresentations in the application, providing notice of rescission, and returning all premiums paid by Mr. King.  I hold that such conduct was proper under Pennsylvania law.  Because all of the specific counts in the Amended Complaint depend on the

premise that Golden Rule acted unlawfully, none survives as currently pleaded. The Amended

Complaint will therefore be dismissed. The dismissal is without prejudice, as Plaintiff might

seek to litigate materiality, but I echo the same caution expressed by Judge Lewis in *Matinchek*.

Policyholders are not left without a remedy if a contract is wrongfully rescinded, because

a carrier that engaged in such conduct would be subject not merely to an action for reinstatement

and enforcement, but also an action for bad faith. In practical terms, the issue comes down to

which party bears the burden of commencing litigation. The paucity of reported cases where a

carrier has unilaterally rescinded is likely a reflection of the potentially larger measure of

damages that would follow if the carrier were found to have acted unlawfully. But no party is

required to follow the most conservative course prescribed by law. Defendant here was

confident enough in the strength of its position to rescind and refund, and I conclude that was an

action it was permitted to take.


      /s/ Gerald Austin McHugh
      United States District Judge